THOMAS JESSUP *vs.* CHARLES E. HULSE and THOMAS E. HULSE and wife.

When an assignment for the benefit of creditors contains provisions which necessarily tend to hinder, delay or defraud creditors, these provisions are conclusive evidence of the design of the parties to the instrument, and the law therefore declares it void, as being within the prohibition of the statute.

It is not necessary, in pleading, to point out the particular features or clauses of the instrument, which are objected to.

It is the intent to defraud upon which the statute fastens, and the law treats these directions or provisions as conclusive proof of such an intent.

A provision in an assignment for the benefit of creditors, directing the assignee " to sell, dispose of, and convey the said real estate and personal property at such time or times, and in such manner as shall be most conducive to the interests of the creditors " of the assignor, " and convert the same into money as soon as may be consistent with the interests of said creditors," renders the assignment void, inasmuch as it confers the power to *delay* making sales of the assigned property, and converting the same into money.

An assignment which authorizes a delay in bringing the assigned property to sale, is open to the same objection as a clause authorizing a sale upon credit, involves the same consequences, and must meet with the same condemnation. *Per* EMOTT, J.

The spirit of the later decisions is, that a debtor can go no farther than to direct the appropriation of his property to the payment of his debts, and to select the person who is to convert and apply it. *Per* EMOTT, J.

MOTION for a new trial upon a case, which was ordered to be heard in the first instance at the general term. The nature of the action, and the facts appearing on the trial at the circuit, together with the legal questions arising from such facts, sufficiently appear in the opinion of the court.

*E. A. Brewster,* for the plaintiff.

*Gott & Van Duzer,* for the defendants.

*By the Court,* EMOTT, J. The object of this action is to set aside a conveyance of real estate to the defendant Pamelia Hulse, the wife of Thomas E. Hulse, and a sale of personal property to Thomas E. Hulse, and also a judgment confessed by Charles E. Hulse to Thomas E. Hulse. The sale and con-

veyance were made by Mr. Joseph W. Gott, acting as assignee of Charles E. Hulse, in trust for the benefit of creditors, and they are attacked on the ground of the invalidity of the assignment. It is objected that Mr. Gott is a necessary party to the action, so that no judgment can be given in his absence. But none of the property is now in possession of Mr. Gott; he has parted with all his title to it, and if he has received any proceeds, no recourse to them is asked for. No judgment or relief is asked against Mr. Gott, and the object of the action will be attained by setting aside the title of his grantees. The present controversy can be completely disposed of without affecting him, and therefore without requiring him to be a party to the suit.

The defendants' title to both the real and personal property which they purchased of the assignee of Charles E. Hulse, is subject to all the defects, and liable to all the objections, which could affect his title. They are not *bona fide* purchasers; so the jury have found, and very correctly, because the only consideration for these purchases which moved from either Thos. E. Hulse or his wife, was a receipt given to the assignee upon a debt due from Charles E. Hulse to Thomas E. Hulse, and which was preferred in the assignment. The property was therefore simply transferred, and conveyed in payment of a precedent debt. No money was advanced, and no existing security relinquished. If the payment failed, the parties were left in their original condition, and the debt continued unsatisfied. Thus there was no valuable consideration paid by these purchasers, and therefore they were not what the law regards as purchasers in good faith, and can claim no greater right than such as belonged to their grantor. The validity of his title of course depended upon the validity of the assignment made to him by Charles E. Hulse, in trust for the payment of his debts.

It was contended that the allegations in the complaint are not sufficient to put in issue the validity of this instrument; unless it could be impeached for fraud in fact, or because it

was not accompanied by a change of the possession of the assigned property. The complaint contains a distinct charge that the assignment was made to hinder, delay and defraud the creditors of the assignor, and that it is therefore fraudulent and void. This is unexceptionable and sufficient pleading, where the vice of the instrument is inherent in its terms. When an assignment contains provisions which necessarily tend to hinder, delay or defraud creditors, these provisions are conclusive evidence of the design of the parties to the instrument, and the law therefore declares it void, as within the prohibition of the statute. It is not necessary in pleading to point out the particular features or clauses of the instrument which are objected to. It is the intent to defraud upon which the statute fastens, and the law treats these directions or provisions as conclusive proof of such an intent.

A part of the relief asked by this complaint is, that a judgment confessed by Charles to Thomas Hulse should be set aside. This might have been done upon motion, but it was properly sought in the present suit. The statement in the confession is insufficient and bad within all the decisions ; and it was immaterial, so far as regards the rights of the present plaintiff, or the object of his suit, whether the indebtedness, for which this judgment was confessed, was honest and justly due or not. So far as a subsequent judgment creditor is concerned, if the judgment does not conform to the statute, it must give way and lose its priority. If it could be amended, it would be only as to the rights of the parties to the judgment, and without prejudice to those of other judgment creditors.

The case turns entirely upon the validity of the following provision in the assignment. The assignee is directed " to sell, dispose of and convey the said real estate and personal property at such time or times and in such manner as shall be most conducive to the interests of the creditors of the said party of the first part, and convert the same into money as soon as may be consistent with the interests of said creditors."

It is contended that this provision confers upon the assignee a discretionary authority to delay the sale of the property, and to sell upon credit, if he thinks proper. In the two leading cases of *Nicholson* v. *Leavitt* and *Burdick* v. *Post*, (2 *Seld.* 510, 522,) the assignments contained an express authority to the assignee to sell the property either for cash or upon credit, according to his discretion; and these decisions have established the doctrine that an assignment for the payment of debts is void, if it authorizes a sale of the property on credit. In *Brigham* v. *Tillinghast*, (3 *Kern.* 215,) the assignment in question directed the assignees to convert the property, as soon as practicable and expedient for the best interests of all concerned, into cash or *available means*. This direction was held to be fatal to the instrument, for the reason that "*available means*" must be understood to mean credits, and therefore the assignees were authorized to sell on a credit. The clause directing the assignees to convert the property, as soon as practicable and expedient for the interests of the creditors, was not considered, and the decision was placed altogether upon the effect of authorizing the sale for available means. This case does not therefore decide whether a direction to convert the property into money, as soon as expedient, would of itself imply an authority to sell upon credit; nor whether it would authorize the assignee to delay exposing the property to sale until he should consider it expedient to do so; nor finally, whether expressly bestowing this discretion upon the assignee would avoid the assignment. The assignment now before us does not authorize, in terms, a conversion of the property into any thing but cash. In that respect it differs from the deed in question in *Brigham* v. *Tillinghast*, and also from an assignment which was condemned by Judge Welles, in a case decided by him at special term, and reported in 8 *How. Pr. R.* 468, (*Murphy* v. *Bell.*) The authority conferred on the assignees in that case was, "within such convenient time as to them should seem meet and most conducive to the interests of those concerned," to convert the assigned

property, "*and all the securities taken for the same,*" into money. The learned judge expresses the opinion that the language used as to the time within which the property should be sold, of itself conferred an authority to sell on credit. But the clause directing a conversion, not only of the property, but of all securities taken for the same, as Judge Welles justly remarks, makes the inference very strong that the assignor contemplated sales on credit. This clause distinguishes that case, somewhat, from the present.

The case of *Woodburn* v. *Mosher*, (9 *Barb.* 255,) is also reported at special term. The language there was that the assignees were, within such convenient time as to them should seem meet, to convert the property into money. This was held to be fraudulent, not as authorizing sales for credit, but as conferring upon the assignee discretionary power to delay the sale, and thus postpone the conversion of the debtor's property, and the payment of his debts. In *D'Ivernois* v. *Leavitt*, (23 *Barb.* 63,) the reason for setting aside the assignments, which did not fall within the scope of the decision in *Nicholson* v. *Leavitt*, (2 *Seld.* 510,) was that these instruments authorized the trustees to make distribution of the proceeds of their sales within such convenient time as to them should seem meet. Here the discretion to delay was in the distribution, not in making sales or realizing the proceeds; but, in either case, there was a delay created, a hindrance interposed, which the courts would not tolerate. I think the principle which these cases contain is fatal to the present assignment, whatever construction may be given to the clause we are considering.

It may be well, however, before examining this question more particularly, to advert to the case of *Kellogg* v. *Slauson*, (1 *Kern.* 302,) which was cited to sustain this assignment. In that case the question arose upon an assignment which authorized the assignees to dispose of the property upon such terms and conditions as in their judgment might be best for the parties, and to convert the same into money. The court,

acting upon the principle that such a construction ought to be given to every deed as will sustain it, if possible, held that the discretion here conferred, as to the terms and conditions of the sale, would be satisfied by referring it to regulating the manner in which sales were to be made, whether public or private, or in bulk or small quantities. The time, either of sales or payments for property sold, was not mentioned, and it was held that the discretion conferred did not necessarily, or by its terms, extend to this. There is nothing in that case inconsistent with the subsequent decisions to which I have referred, or with the doctrine distinctly announced in *Brigham* v. *Tillinghast*, (3 *Kern*. 215,) and still more expressly in *Dunham* v. *Waterman*, (17 *N. Y. R.* 9,) that the whole extent of the power of an insolvent debtor over his property, when he makes a general assignment, is to select his assignee, and to direct the order of the application of his property, and of the payment of his debts. He may substitute his assignee for the officer of the law, and he may indicate an order of preference among his creditors, instead of the priority or the equality which the law establishes; but if he attempts more than this, he interposes delay and hindrance, if he does not defraud his creditors.

I do not think it necessary to determine whether the assignment now before us imports or confers an authority to sell on credit. If it do not, it must confer the power to delay making sales of the assigned property, until such time as the assignee may think most conducive to the interests of creditors. That is the very language of the deed; and besides this, the property is to be converted into money, not forthwith, but "as soon as may be consistent with the interests of the creditors." The objection to assignments authorizing sales on credit is, that they postpone the payment of the assignor's debts. The credit given to the purchasers of his property, either with the object of realizing larger prices, or for any other purpose, necessarily extends the time of payment of his debts, and this is beyond the power of the debtor. He cannot, by transfer-

ring his property to a friendly assignee, avoid the obligation of immediate payment. The same reason exists for the objection to an assignment which, as in *D'Ivernois* v. *Leavitt*, authorizes a distribution at the pleasure or discretion of the assignees. Thus the courts condemn assignments which permit the assignees to delay the time of payment for property sold, in order to its conversion into money, and also assignments which authorize the assignees to postpone for any length of time the distribution of the proceeds of sale. Both these classes of deeds are condemned, because their effect is to sanction a delay of the ultimate payment of the creditors. An assignment which authorizes a delay in bringing the assigned property to sale, is open to the same objection, involves the same consequences, and must meet with the same condemnation. Indeed, it is here that the temptation to delay for the advantage of the debtor is often the strongest. If an insolvent debtor can secure his property from the grasp of the law, and place it in friendly hands, authorized to hold it until times may change, and the property can be sold to better advantage, he will often secure a great benefit to himself. But it will be at the expense of his creditors, or at least in violation of their rights. They have a right to insist upon the appropriation of his property to the payment of his debts, without any farther delay than such as is necessary and inevitable. He has no more right to delay the sale of his property than he has to postpone the collection of its proceeds or their distribution among his creditors.

It is said that a direction to an assignee to sell at such times as may be conducive to the interests of the creditors, is simply giving him a discretion which the law itself confers upon him. The answer to this proposition is given by Judge Selden, in *Dunham* v. *Waterman*, (17 *N. Y. Rep.* 19.) Here is a discretion conferred to delay the sale of the assigned property. Admitting that if the assignment had been silent on this point, the law would have permitted the exercise of some discretion in the time of the sale, that would be the law's dis-

cretion. It would be determined by the courts, and the trustee could be hastened if the courts saw fit. . But if the debtor can confer on his trustee the power to determine when his property shall be sold, what right could the courts have to hasten his movements, unless he was evidently acting in bad faith? If he could say that he expected, by postponing a sale, to obtain larger prices for the property, he would be acting within both the letter and spirit of his discretionary power; and as long as he was honest in such a course, and perhaps showed good ground for his belief, what right would the courts have to interfere? But a man's creditors have a right to the application of his property to their demands forthwith, and not when it will sell for the largest prices, or pay the most of his debts. They have a right to ask, what the court, if such an assignment were sustained, would have no power to compel, an immediate appropriation of their debtor's property. The answer to their petition for this would be, that the debtor had conferred on his assignee the power to determine when he would sell his property, and this trustee was holding it, honestly awaiting a rise in prices which would enable him to realize more, and therefore the court could not interfere. We shall be compelled to give such answers as this to creditors who are hindered and delayed by assignments—and they are all, to some extent, hindrances—or we must adhere to the spirit of the later decisions, and hold that a debtor can go no farther than to direct the appropriation of his property, and select the person who is to convert and apply it.

We are of opinion that the rulings of the judge at the circuit were correct, and that judgment must be entered for the plaintiff with costs. This judgment must provide for the appointment of a receiver, and the delivery to him of the personal property conveyed to the defendants, or the payment of its value. It will also declare the invalidity of the defendants' title to the real estate, and remove the obstruction to the enforcement of the plaintiff's lien in its proper order.

KINGS GENERAL TERM, July 5, 1859. *Lott, Emott* and *Brown*, Justices.]